UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

In re,

Derivium Capital, LLC,

Debtor(s).

Grayson Consulting, Inc.,

Plaintiff(s),

v.

Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, First Clearing, LLC, Morgan Keegan & Co., Inc., and Janney Montgomery Scott LLC,

Defendant(s).

C/A No. 05-15042-JW

Adv. Pro. No. 07-80119-JW

Chapter 7

**ORDER**

FILED at ___ O'clock & ___ min. ___ M
JUN 10 2008
United States Bankruptcy Court
Columbia, South Carolina (6)

ENTERED
JUN 10 2008
J.G.S.

This matter comes before the Court on Motion to Dismiss ("Motion") filed by Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, and First Clearing, LLC (collectively referred to as "Wachovia"). Plaintiff Grayson Consulting, Inc. ("Grayson") filed an objection to the Motion (the "Objection"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

**FINDINGS OF FACT[2]**

1. Derivium Capital, LLC ("Debtor") filed the above-captioned bankruptcy case as a case under Chapter 11 of the Bankruptcy Code on September 1, 2005 in the United States Bankruptcy Court for the Southern District of New York.

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

[2] For purposes of this Order, the Court accepts the allegations of Grayson's amended complaint as true.

2. The Bankruptcy Court in New York subsequently converted this case to a case under Chapter 7 and transferred venue to this District.

3. On November 7, 2005, Kevin Campbell ("Trustee") was appointed as the Chapter 7 trustee for Debtor.

4. Prior to the petition date, Debtor was owned and operated by Charles Cathcart, Scott Cathcart, and Yuri Debevc ("Derivium Owners").

5. Debtor operated a "stock-loan" program whereby borrowers could pledge publicly traded stock to Debtor in exchange for a loan in the amount of 90% of the value of the stock. At the maturity of the loan, the borrowers could either pay the loan and recover their stock or elect to pay nothing and treat the loan as satisfied by the previously pledged stock or refinance the transaction for an additional term.

6. According to the allegations in the complaint, the borrowers were promised by the Derivium Owners that this program, through a complex and secret hedging strategy, protected both against the risk of stock deprecation and allowed the borrowers to recapture the benefit of their stock if the stock appreciated over the term of the loan. However, unbeknownst to the borrowers, Debtor was immediately selling the stock and transferring the proceeds through various offshore lenders into Shenandoah Holdings, Ltd., which then transferred the proceeds into various start-up businesses. This network of lenders and businesses were allegedly owned and controlled by the Derivium Owners. Many of the start-up businesses were located in South Carolina and underwent chapter 7 liquidation before Debtor filed the petition in this case. In total, Debtor received and liquidated over $1 billion in stock, thus receiving approximately $100 million in proceeds. The Derivium Owners allegedly received and used the bulk of these proceeds for their various failed businesses and their personal use.

7.    To carry out the stock-loan program, Debtor used brokerage accounts with Wachovia and other entities.[3] According to the amended complaint, Wachovia, at the direction of the Derivium Owners, liquidated the pledged stock to assist the Derivium Owners in the alleged fraud against the borrowers. Grayson asserts that Wachovia knew that the Derivium Owners were depicting the transactions with Debtor as stock-loans, in which the borrowers retained an ownership interest in the pledged stock, yet Wachovia nevertheless assisted in the scheme by liquidating the borrowers stock. Grayson alleges that some of the borrowers, including Alan Grayson, had brokerage accounts with Wachovia and were steered to Wachovia for purposes of opening accounts to pledge to Debtor. As a result of Wachovia's participation in the liquidation of pledged collateral, it allegedly received millions of dollars in fees and commissions.

8.    Following the maturity of some of the stock-loans, Debtor was unable to satisfy its obligation to return the pledged stock, due to the appreciation of the stock and the failure of many of the start-up businesses.

9.    At some point, Debtor ceased doing business and the Derivium Owners formed Derivium Capital USA, Inc. and Veridia Solutions, LLC to take over the business of Debtor. Grayson generally refers to Debtor and the other entities used by the Derivium Owners to carry out the stock-loan program as the "Stock Loan Entities" in the complaint.

10.    On August 31, 2007, the Trustee filed the complaint in this adversary. Grayson subsequently purchased the Trustee's rights for $25,000.00 and an agreement to repay Debtor's estate a small percentage of any net recovery in this matter. Grayson was substituted as plaintiff for the Trustee and filed an amended complaint on December 21, 2007.

---

[3]    The other entities that are the subject of this adversary have sought to have the reference withdrawn.

11. Grayson alleges various tort causes of action against Wachovia for its actions in allegedly assisting the Derivium Owners in unlawfully liquidating the borrowers' collateral, thereby damaging Debtor, by providing Debtor or the Derivium Owners with brokerage services. Grayson alleges that Wachovia aided and abetted the Derivium Owners in fraud, breach of fiduciary duty, fraudulent conveyance, and conversion. Grayson also alleges that Wachovia was negligent, breached a fiduciary duty owed to Debtor, converted property of Debtor, conspired with the Derivium Owners to injure Debtor, and seeks a constructive trust. The foregoing represent the nine "tort claims" alleged in Grayson's amended complaint. Grayson also alleges claims pursuant to 11 U.S.C. §§ 544 and 548.

12. Wachovia has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based upon alleged defects or defenses appearing on the face of the amended complaint.

## CONCLUSIONS OF LAW

**I.    Standard for Granting the Motion**

In deciding the Rule 12(b)(6) motion to dismiss, the Court must take all well-pleaded material allegations of a complaint as admitted and view them in the light most favorable to Grayson. See De Sole v. U.S., 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848 (1969)). A Rule 12(b)(6) motion should not be granted unless it "appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved at trial in support of his claim." Rogers v. Jefferson Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citing Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). The function of a motion to dismiss is to test "the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Notwithstanding the general rule that affirmative defenses should not be considered

4

on a motion to dismiss, the Fourth Circuit allows defenses to be considered if they clearly appear on the face of the complaint. See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993).

## II.     The Doctrine of *In Pari Delicto* Bars Grayson's Tort Claims

Wachovia asserts that the nine tort claims are barred under the doctrine of *in pari delicto*. The equitable doctrine of *in pari delicto* prohibits indemnification among wrongdoers. See Bateman, Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306-307, 105 S.Ct. 2622 (1985). The doctrine is designed to deter illegality by not lending judicial aid to disputes among wrongdoers. See id. In its classic formation, the defense is narrowly limited to those situations in which the plaintiff bore equal or greater fault than the defending party. See id. at 307. In Bateman, the Supreme Court did not apply the defense due to certain public policy concerns associated with securities law; however, in the context of bankruptcy litigation, the doctrine has been consistently applied by various circuit courts to bar suits by bankruptcy trustees, or their assignees, when the debtor was equally culpable for the alleged wrongs committed by the defendants. See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145 (11th Cir. 2006).

This Court has recognized in a related adversary proceeding that the defense should not be applied to benefit the insiders of Debtor who were acting adversely to Debtor's interest. See Campbell v. Cathcart et al. (In re Derivium Capital, LLC), C/A No. 05-15042-W, Adv. Pro. No. 06-80163, slip op. at 6-8 (Bankr. D.S.C. Dec. 22, 2006); Hampton Hotel Investors, L.P.), 289 B.R. 563, 577 n.23 (Bankr. S.D.N.Y. 2003) ("In pari delicto bars claims against third parties, but does not apply to corporate insiders or partners."). Grayson, relying on this prior order, asserts that the defense should not apply because the Derivium Owners acted adversely to Debtor's interest. However, unlike the Campbell case, Wachovia is not alleged to be an insider of Debtor

5

and therefore, the defense may apply, notwithstanding the adverse actions of the Derivium Owners, if they were the "sole actors" for Debtor. The sole actor rule inputs an agent's fraudulent conduct to the principal if the agent is the sole representative for the principal, regardless of whether the agent was acting adversely to the principal's interest.[4] See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 359 (3rd Cir. 2001).

In this case, Grayson's amended complaint is replete with allegations that the Derivium Owners dominated control of Debtor and its stock-loan operation and that they engaged in conduct equal to or greater than the alleged wrongful conduct by Wachovia.[5] Although the Court is not aware of Fourth Circuit or South Carolina precedent expressly applying the sole

---

[4] The sole actor rule is itself subject to an exception if there is an "innocent director" who was unaware of the wrongdoing and had the ability to bring an end to the fraudulent activity engaged in by other agents of the corporation. Smith v. Arthur Andersen L.L.P., 175 F.Supp.2d 1180, 1198-1200 (D. Ariz. 2001); Sharp Int'l Corp. v. KPMG LLP (In re Sharp Int'l Corp.), 278 B.R. 28, 37-39 (Bankr. E.D.N.Y. 2002). In this case, there is no allegation that there is an innocent director who could have brought an end to the alleged fraudulent activities engaged in by the Derivium Owners.

[5] For example, the Complaint alleges:
- ¶ 12   All of these entities were owned and controlled by the Derivium Owners.
- ¶ 13   The various legal entities that the Derivium Owners employed to process stock loans are all one and the same organization, with no distinct or legitimate corporate separation.
- ¶ 18   All of these entities and all of these accounts were controlled by Derivium's Owners.
- ¶ 29   The Derivium Owners thus not only diverted all available Derivium Capital funds to themselves, but $4.5 million beyond that amount.
- ¶ 31   [T]hus the Derivium Owners sometimes were using funds derived from new transactions carried out in Defendants' brokerage accounts to pay off funds owed on old transactions, the very definition of a Ponzi scheme.
- ¶ 34   The Derivium Owners created and provided borrowers with a so-called "Master Agreement."
- ¶ 36   The Derivium Owners informed borrowers that for them to consider any stock loans, the borrower would have to sign the "Master Agreement."
- ¶ 43   These representations crafted and disseminated by the Derivium Owners were gross lies. The Derivium Owners simply took the stock that they had received as collateral and sold it, such sales occurring in Defendants' brokerage accounts.
- ¶ 46   The Derivium Owners and their agents also informed borrowers that the stock loans were not just loans, but sophisticated financial tools that Derivium Owners had used for more than 15 years.
- ¶ 48   The Derivium Owners simply took the stock that the Stock Loan Entities received as collateral, and had [sic] Defendants sell it.
- ¶ 50   Derivium Owners caused the Stock Loan Entities to renege on one or more "stock loans."
- ¶ 51   [T]he Derivium Owners and their agents made these statements to borrowers for the purpose of furthering the "stock loan" scheme....
- ¶ 54   [T]he Derivium Owners caused the Stock Loan Entities to send a maturity letter to borrowers.
- ¶ 62   In short, the Derivium Owners stripped every bit of funds from the Debtor.

actor rule, the rule is nevertheless "an established principle of agency law."[6] See Grassmueck v. Am. Shorthorn Ass'n., 402 F.3d 833, 838 (10th Cir. 2005); see also Curtis, Collins & Holbrook Co. v. U.S., 262 U.S. 215, 224, 43 S. Ct. 570, 67 L. Ed. 956 (1923) (applying the sole actor rule to input knowledge to the principal). "The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability." See Lafferty, 267 F.3d at 359. Taking the well pled allegations of the amended complaint as true, the Court finds that the Derivium Owners were the sole actors for Debtor and that their actions should be imputed to Debtor for purposes of this adversary. Because the actions of the Derivium Owners are imputed to Debtor, Debtor was *in pari delicto* with Wachovia in the alleged stock-loan scheme that diverted assets out of Debtor and into the hands of the Derivium Owners. Therefore, Grayson, as successor to Debtor's rights against Wachovia, cannot recover from Wachovia under the nine tort causes of action.[7]

Although Grayson urges the Court not to apply the *in pari delicto* defense because it is the successor to the rights of the Trustee, the Court cannot ignore the precedent by every Circuit Court that has considered the issue and find that this status does not afford Grayson special

---

[6] The Supreme Court of South Carolina has suggested that it would apply the sole actor rule when there is wrongful conduct by the sole officers of a company. See Fant v. Easley Loan & Trust Co., 170 S.C. 61, 169 S.E. 659, 662 (S.C. 1933) (finding, *in dicta*, that a bank was charged with the knowledge of its officers' wrongful conduct although such conduct did not benefit the bank and resulted in the bank being placed in a receivership where the officers merely used the bank as their "instrument" to commit wrongs).

[7] Wachovia also moved to dismiss several of the nine tort actions based upon alleged defects in the pleading of the amended complaint. The Court does not need to consider the merits of these defenses based upon the finding that *in pari delicto* is a complete defense to each of the tort actions. Wachovia also asserted that the nine tort actions are barred pursuant to the South Carolina statute of limitations. For the reasons set forth in GO Computer, Inc. v. Microsoft Corp., 508 170, 179 (4th Cir. 2007); Grassmueck v. Am. Shorthorn Ass'n, 365 F.Supp.2d 1042 (D. Neb. 2004) (aff'd 402 F.3d 833 (10th Cir. 2005)); and Harrison v. Bevilacque, 354 S.C. 129, 580 S.E.2d 109 (S.C. 2003), it appears that the nine tort actions may be time barred. However, the amended complaint does not specifically allege when Debtor began its relationship with Wachovia and therefore it would not appear appropriate to dismiss the amended complaint based upon the statute of limitations at this stage.

protection from the defense.[8] See In re Mediators, Inc., 105 F.3d 822, 827 (2nd Cir. 1997); Lafferty, 267 F.3d at 355-357; Terlecky v. Hurd (In re Dublin Sec., Inc.), 133 F.3d 377, 380 (6th Cir. 1997); Grassmueck, 402 F.3d at 836-837; Sender v. Buchanan (In re Hedged-Investments Assoc.), 84 F.3d 1281, 1285 (10th Cir. 1996); Edwards, 437 F.3d at 1149-1150. Pursuant to 11 U.S.C. § 541, the Trustee's rights against Wachovia spring from Debtor's rights at the commencement of the case. Edwards, 437 F.3d at 1150. As a result, the Trustee and Grayson, as his successor, stand in the shoes of Debtor and are subject to any legal or equitable defenses that could have been raised against Debtor. See Grassmueck, 402 F.3d at 836. Debtor's causes of action are not cleansed by virtue of the petition and the appointment of a chapter 7 trustee. See Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition."). Given the well-pled allegations of the amended complaint that the Derivium Owners dominated Debtor and engaged in the alleged wrongful conduct with Wachovia, the doctrine of *in pari delicto* bars the nine tort causes of action and therefore the Court should grant Wachovia's Motion as to these causes of action. See Dublin Sec., 133 F.3d at 380 (affirming an order granting a motion to dismiss pursuant to *in pari delicto* even though trustee asserted that individuals, who dominated the debtors' businesses, were to blame for the harm to the debtors).

### III. Grayson Must Re-Plead The Statutory Causes of Action

Grayson's last two causes of action are statutory actions under 11 U.S.C. §§ 544 and 548. Each statute would allow Grayson to recover certain transfers of property in which Debtor had an interest; however, the amended complaint alleges transfers by the "Stock Loan Entities" to

---

[8] Although one bankruptcy court has held that the defense of *in pari delicto* does not apply to a bankruptcy trustee, this holding has been overruled by the 11th Circuit's decision in Edwards. See In re Fuzion Tech. Group, Inc., 332 B.R. 225, 234 (Bankr. S.D. Fla. 2005).

8

Wachovia. As defined, this group of entities includes Debtor and multiple other organizations.[9] The amended complaint fails to specifically allege a transfer of Debtor's property to Wachovia. Further, the inference in the Tenth Cause of Action that Debtor made transfers to Wachovia within one year prior to the petition date appears inconsistent with Grayson's assertion in paragraph 12 of the amended complaint that Debtor ceased doing business around 2002. As the amended complaint is drafted, the Court is unable to determine if any property of Debtor was transferred to Wachovia or if the property transferred to Wachovia was that of the other Stock Loan Entities.

Grayson's action under 11 U.S.C. § 544 is also premised on the fact that Debtor was indebted to a creditor at the time such transfers were made. Although, on brief, Grayson points to records within the Court's docket and statements in the amended complaint about Debtor's dealings with General Holdings, Inc., the amended complaint fails to sufficiently set forth facts demonstrating that Debtor was indebted at the time of the alleged transfers and thus the action under 11 U.S.C. § 544 is defective. See In re J.R. Deans Co., 249 B.R. 121, 129 (Bankr. D.S.C. 2000) (finding the court must make an initial determination as to whether there was a creditor with a claim that would allow a trustee standing to bring an action under 11 U.S.C. § 544).

Finally, Grayson has failed to plead fraud with particularity pursuant to Fed. R. Civ. P. Rule 9(b). While malice, intent, knowledge, and other conditions of the mind of a person may be averred generally, the remaining allegations of the claim must be pled with specificity. At a minimum, the complaint should contain information regarding the time, place, and nature of the fraudulent conduct. See Harrison v. Westinghouse Savannah River Co., 176 F.3d. 776, 784 (4th

---

[9] The Trustee has sought to substantively consolidate the assets of the Derivium Owners, Derivium Capital USA, Inc. and Veridia Solutions, LLC with the estate of Debtor; however, this action is still pending before the District Court. See Campbell v. Cathcart, C/A No. 2:06-cv-03283-DCN.

Cir. 1999); Campbell v. Cathcart et al. (In re Derivium Capital, LLC), 380 B.R. 429 (Bankr. D.S.C. Dec. 22, 2006); Lippe v. Bairnco Corp., 224 B.R. 846, 856 (S.D.N.Y. 1998).

Although the amended complaint sufficiently sets forth the conduct at issue, Grayson fails to provide sufficient detail of when the alleged fraudulent transfers by Debtor to Wachovia took place and the particular source of these transfers. Fed. R. Civ. P. 9(b) may not require a day by day account of each transfer but it does require Grayson to set forth in more sufficient detail when Debtor, and not other entities, made transfers to Wachovia. These details appear important to Wachovia's ability to formulate a defense since transfers by entities other than Debtor may not be recoverable by Grayson or, alternatively, Wachovia may have a complete defense if the transfers were not made within the allowed statute of limitations. As pled, the amended complaint merely recites the standard for granting relief under 11 U.S.C. §§ 544 and 548 and generally alleges that the "Stock Loan Entities" made transfers to Wachovia. This is insufficient under the heightened pleading standard of Fed. R. Civ. P. 9(b). Based upon the foregoing, the Court grants the Motion with respect to the 11 U.S.C. §§ 544 and 548 causes of action but Grayson shall be given leave to amend the complaint with regard to those causes of action. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (finding that when "dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts"); Francisco v. Doherty, Sheridan, & Grimaldi, LLP, 178 F.3d 1283, 1999 WL 231790 (4th Cir. 1999) (unpublished) (reversing the dismissal of a case pursuant to Rule 12(b)(6) without granting plaintiff leave to amend).

10

## CONCLUSION

Based upon the foregoing, the Motion is granted subject a limited right to amend. The first nine causes of action are dismissed based upon Debtor being *in pari delicto* with Wachovia. Grayson shall have ten (10) days from the entry of this Order to amend the complaint regarding the remaining causes of action pursuant to the findings of this Order. Wachovia's remaining requests for relief are denied.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
June 9, 2008

11