UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FILED
at___O'clock &___min.___M

SEP 19 2008

United States Bankruptcy Court
Columbia, South Carolina (6)

In re,

Derivium Capital, LLC,

Debtor(s).

Grayson Consulting, Inc.,

Plaintiff(s),

v.

Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, First Clearing, LLC,

Defendant(s).

C/A No. 05-15042-JW

Adv. Pro. No. 07-80119-JW

Chapter 7

ORDER

ENTERED
SEP 19 2008
J.G.S.

This matter comes before the Court on the Motion to Dismiss ("Motion") filed by Wachovia Securities, LLC, Wachovia Securities Financial Network, LLC, and First Clearing, LLC (collectively referred to as "Wachovia"). Plaintiff Grayson Consulting, Inc. ("Grayson") filed an objection to the Motion (the "Objection"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT[2]

1. On September 1, 2005, Derivium Capital, LLC ("Debtor") filed the above-captioned bankruptcy case as a case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

2. On November 4, 2005, the Bankruptcy Court in New York converted this case to a case under Chapter 7 and transferred venue to this District.

3. On November 7, 2005, Kevin Campbell ("Trustee") was appointed as the Chapter 7 trustee for Debtor.

4. Prior to the petition date, Debtor was owned and operated by Charles Cathcart, Scott Cathcart, and Yuri Debevc ("Derivium Owners").

5. Debtor operated a "stock-loan" program whereby borrowers could pledge publicly traded stock to Debtor in exchange for a loan in the amount of 90% of the value of the stock. At the maturity of the loan, the borrowers could either pay the loan and recover their stock or elect to pay nothing and treat the loan as satisfied by the previously pledged stock or refinance the transaction for an additional term.

6. According to the allegations in the Second Amended Complaint, the borrowers were promised by Debtor, through the Derivium Owners, that this program, through a complex and secret hedging strategy, both protected against the risk of stock depreciation and allowed the borrowers to recapture the benefit of their stock if the stock appreciated over the term of the loan. However, unbeknownst to the borrowers, Debtor was immediately selling the pledged stock and transferring the proceeds through a network of other entities also controlled by the Derivium

---

[2] For purposes of review at this stage of the pleadings, the Court accepts the allegations of Grayson's Second Amended Complaint as true. See Rutan v. Republican Party of Ill., 497 U.S. 62, 65 n.1, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

2

Owners. As a result, following the maturity of some of the stock loans, Debtor was unable to satisfy its obligation to return the pledged stock.

7. In total, it is alleged that Debtor together with Bancroft Ventures Limited ("Bancroft"), received and liquidated over $1 billion in stock, thus receiving approximately $100 million in proceeds. The Derivium Owners, by and through the actions of Debtor, allegedly received and used the bulk of these proceeds for various failed businesses and their personal use.

8. The network of lenders and businesses involved in the stock-loan program, including Bancroft Ventures Limited ("Bancroft"), are alleged to be all one and the same organization, with no distinct or legitimate corporate separation; having the same customers, employees, offices, and property; and all being controlled by the Derivium Owners.

9. To carry out the stock-loan program, Debtor used brokerage accounts with Wachovia and other entities.[3] According to the Second Amended Complaint, the Derivium Owners would then direct a transfer of the pledged stock from Debtor's brokerage account to Bancroft's brokerage account, at which point the Derivium Owners directed Wachovia to liquidate the pledged stock, and Wachovia would receive a brokerage commission for executing the sale. As a result of Wachovia's participation in the liquidation of pledged collateral, it allegedly received millions of dollars in fees and commissions. This stock loan program is characterized by Grayson as a Ponzi scheme.[4]

10. According to the Second Amended Complaint, Debtor ceased doing business in its own name in December 2002. However, it continued to administer the loans, receive

---

[3] The other entities that are the subject of this adversary have sought and obtained a reference withdrawal.
[4] "A Ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors." Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1088 at n. 3 (2d Cir. 1995).

3

brokerage statements on behalf of other entities, control the accounts and issue account statements to its borrowers under its own letterhead.

11. After December 2002, borrowers allegedly were instructed to transfer pledged stock directly to Bancroft's brokerage account at Wachovia, at which point Wachovia would liquidate the pledged stock at the direction of the Derivium Owners.

12. On August 31, 2007, the Trustee filed the initial Complaint in this adversary. Grayson subsequently purchased the Trustee's rights for $25,000.00 and an agreement to repay Debtor's estate a small percentage of any net recovery in this matter. Grayson was substituted as plaintiff for the Trustee and filed an Amended Complaint on December 21, 2007.

13. On June 9, 2008, the Court entered an Order dismissing Grayson's common law claims (Counts One through Nine) with prejudice, concluding that Grayson's claims were barred by the doctrine of *in pari delicto*, and dismissed Grayson's statutory claims under §§ 544 and 548 of the Bankruptcy Code (Counts Ten and Eleven) without prejudice and with leave to amend ("Dismissal Order").

14. On June 24, 2008, Grayson filed a Second Amended Complaint, which included revised fraudulent conveyance claims under § 548 (Count Ten) and § 544 (Count Eleven) against Wachovia.

15. Wachovia has moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) based upon alleged defects or defenses appearing on the face of the amended complaint.

## CONCLUSIONS OF LAW

**I.    Applicable Standard for Determining Rule 12(b)(6) Motion**

In deciding Wachovia's Rule 12(b)(6) motion to dismiss, the Court must take all well-pled material allegations of the Second Amended Complaint as admitted and view them in the

4

light most favorable to Grayson. See De Sole v. U.S., 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848 (1969)). The function of a motion to dismiss is to test "the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."[5] See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The factual allegations of the Second Amended Complaint must be enough to raise Grayson's right to relief above the speculative level, on the assumption that all the allegations are true (even if doubtful in fact). Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). For most claims, the Federal Rules of Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what... the claim is and the grounds upon which it rests." See Fed. R. Civ. P. 8(a). However, claims based on fraud must be stated with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")

Grayson's Second Amended Complaint seeks relief against Wachovia based on two causes of action: fraudulent transfer under state law pursuant § 544[6] and fraudulent transfer pursuant to § 548. Wachovia's Motion asserts that Grayson has failed to state a claim as to each of these causes of action as a matter of law. Specifically, Wachovia asserts that the Second Amended Complaint fails (1) to plead that transfers of Debtor's property were made to Wachovia; (2) to plead fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b); (3) to sufficiently set forth facts demonstrating that Debtor was indebted at the time of the alleged transfers for purposes of the § 544 claim; and (4) to set forth sufficient facts showing that

---

[5] The Fourth Circuit allows affirmative defenses to be considered if they clearly appear on the face of the complaint. See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993).
[6] Section 544(b)(1) permits the trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim...."

5

Wachovia was an "initial transferee" of the stock transfers in order to recover the transfers pursuant to § 550.

## II.     Transfer of Debtor's Property - Alter Ego Theory

Wachovia first asserts that Grayson fails to state a claim under §§ 544 and 548, which apply only to transfers of Debtor's property, because Grayson seeks to recover non-debtor property, i.e., transfers from Bancroft. While the "alter ego" theory is not specifically mentioned in the Second Amended Complaint, Grayson argues in its Objection that Bancroft's property should be considered property of Debtor because Bancroft was the alter ego of Debtor and part of the Ponzi scheme operated by Debtor.[7]

In this case, the Court must apply the South Carolina law to determine whether the Grayson has adequately pled an alter ego theory to allow Bancroft's property to be considered property of Debtor and thereby enable transfers from Bancroft to Wachovia to be recovered under §§ 544 and 548. See Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc, 974 F.2d 545 (4th Cir. 1992) (finding that Virginia state law should have been applied to determine whether corporate form should be disregarded under alter ego or veil piercing theory). The alter ego theory allows a court to impose liability on a second individual or corporation when a plaintiff has made out a cause of action against a primary defendant corporation. See Colleton County Taxpayers Ass'n v. School Dist. of Colleton County, 638 S.E. 2d 685, 692 (S.C. 2006). Under South Carolina law, an alter ego theory requires a showing of (1) total domination and control of one entity by another and (2) inequitable consequences caused thereby. Id. To establish "control" by the dominant corporation, Grayson must demonstrate that the subservient corporation (i.e., Bancroft) was being used to further the purposes of the dominant corporation (Debtor) and that the subservient corporation in reality had no separate

---

[7] Grayson characterizes its allegations as setting forth an alter ego theory in its Objection, in its argument at the hearing on the Motion, and within its proposed order.

existence of its own. <u>Osborn v. University Medical Assoc. of Medical Univ. of South Carolina</u>, 278 F.Supp.2d 720, 727 (D.S.C. 2003).

The Second Amended Complaint includes a number of new allegations regarding the relationship between the Debtor and entities involved in its stock loan scheme. Specifically, Grayson has alleged that the network of businesses and lenders involved in the stock-loan program, including Bancroft, "were engaged in the performance of [Debtor's] business under the direction of [Debtor's] principals" and were "all one and the same organization, with no distinct or legitimate corporate separation." Grayson has additionally alleged that any corporate distinction between these entities was created solely to aid Debtor's owners in the defrauding of Debtor's borrowers and stripping Debtor of its assets. These entities are alleged to be "sham corporate entities" with "no identity or existence independent of [Debtor]," which "were at all times under the complete domination and dominion of the Derivium Owners." Debtor asserts that these entities, defined as "Stock Loan Entities" within the Second Amended Complaint,[8] should "be collapsed into Debtor Derivium Capital" and "any and all transfers of commissions or stock from any of the Stock Loan Entitites to Wachovia should be treated as the equivalent of a transfer of commissions or stock from [Debtor] to Wachovia."

Wachovia argues that Grayson failed to allege that Debtor itself dominated and controlled Bancroft or the other Stock Loan Entities. However, the Second Amended Complaint is replete with allegations regarding the Derivium Owners' dominion and control of Debtor, Bancroft, and the other Stock Loan Entities. In fact, it was these very allegations that served as the basis for the Court's dismissal of the first nine causes of action in the Dismissal Order on the grounds that Debtor was *in pari delicto* with Wachovia in the alleged stock-loan scheme. In order to apply

---

[8] "Stock Loan Entities" is defined in the Second Amended Complaint to include Derivium Capital, Derivium USA, Veridia, Shenandoah Holdings, Ltd., Spencer Partners Limited, and Stock Loan Lenders. The term "Stock Loan Lenders" is not defined elsewhere in the Second Amended Complaint but appears to refer to Bancroft Ventures, Limited, WITCO, Optech Limited, and Diversified Design Associates.

7

the *in pari delicto* defense, the Court found that "[t]aking the well pled allegations of the amended complaint as true, ... the Derivium Owners were the sole actors for Debtor and ... their actions should be imputed to Debtor for purposes of this adversary." Wachovia clearly benefited from this finding, as these causes of action asserted against Wachovia were dismissed with prejudice. Since the Court has previously found that the Complaint alleges facts sufficient to impute the Derivium Owners' conduct to Debtor, the Court further finds for purposes of this Rule 12(b)(6) motion that Grayson has sufficiently alleged facts that, if true, demonstrate that Debtor, by virtue of the acts of the Derivium Owners, exercised dominion and control over Bancroft and therefore, Bancroft could be found to be the alter ego of Debtor.[9] Since the property of alter egos of the Debtor could be considered property of the Debtor under the broad definition of "property of the estate" under § 541,[10] the Court concludes that the Second Amended Complaint sufficiently alleges claims under § 544 and § 548.[11]

In its Reply to Grayson's Objection, Wachovia also asserts that Grayson's alter ego theory fails on procedural grounds due to Grayson's failure to name Bancroft in the Second Amended Complaint, citing In re Energy Smart, Inc., 381 B.R. 359, 379 (Bankr. M.D. Fla. 2007). The bankruptcy court in Energy Smart denied the trustee's claims for recovery of transfers from debtor's alleged alter ego where the trustee failed to name the alter ego as a defendant and provide the alleged alter ego corporation with notice and an opportunity to respond to alter ego allegations.

---

[9] Even though the Second Amended Complaint discusses "a network of businesses and lenders involved in the stock-loan program who were all one and the same organization," Grayson's Objection and Proposed Order appear to limit the application of the alter ego theory to Bancroft.

[10] Section 541 states that the estate is comprised of "any interest in property that the trustee recovers under section... 550...." In this case, Grayson is asserting the Trustee's rights to recover property pursuant to §§ 544 and 548 as made applicable by § 550. Thus, whatever property Grayson recovers would be considered property of the estate.

[11] Because the Court concludes that Grayson has sufficiently pled that Bancroft is the Debtor's alter ego, it further finds that Grayson has sufficiently alleged transfers by Debtor within the one-year prior to the petition to state a claim under § 548.

It appears that Grayson is not seeking relief from the alleged alter ego corporation (Bancroft) in this case. Rather, the application of the alter ego theory in this case would allow Grayson to recover transfers from Wachovia as an "initial transferee" from Bancroft as Debtor's alter ego. Absent jurisdiction over Bancroft, a judgment that Debtor and Bancroft were alter egos may only bind Debtor. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.") Other courts have allowed a trustee to assert the alter ego doctrine to recover fraudulent transfers without naming the alter ego. See In re Fisher, 362 B.R. 871 (S.D. Ohio 2007). The court in Energy Smart cited no authority for its determination that naming the alter ego was required. Furthermore, Energy Smart is not binding authority in this district. Accordingly, under the circumstances of this case, the Court declines to follow Energy Smart and require Grayson to name Bancroft at this stage in this action.

### III. Was Fraud Pled with Sufficient Specificity?

In its Dismissal Order, the Court found that the Amended Complaint was deficient with respect to the § 544 and § 548 claims because Grayson failed to provide sufficient detail of when the alleged fraudulent transfers by Debtor to Wachovia took place and the particular source of those transfers. In its Second Amended Complaint, Grayson has alleged that specific transfers of stock were made from Debtor's brokerage account with Wachovia to Bancroft's brokerage account with Wachovia and that transfers of stock were also made directly from borrowers to Bancroft's Wachovia account. Grayson further alleges that the stock was then sold out of the Bancroft account, earning Wachovia commissions. Hundreds of transfers are alleged to have been made between September 1, 2002 through December 2003 from the Debtor's brokerage account, and between 2004 through 2005 from Bancroft's brokerage account. Grayson further

9

details specific transactions alleged to have been made between Alan Grayson and Debtor occurring in October of 2002 and September of 2003. By virtue of having alleged that Bancroft was the alter ego of Debtor, it appears that the allegations regarding transfers from Bancroft to Wachovia, if true, are sufficient to demonstrate transfers were made between Debtor and Wachovia. Considering the challenges of knowing and alleging the complete details of hundreds of such transfers, the Court finds that the Second Amended Complaint sets forth the § 544 and § 548 claims with sufficient particularity.[12] Furthermore, considering the large number of transfers at issue and the complicated nature of the relationships between the Derivium Owners, the Debtor, Bancroft, and these other entities, the Court is now satisfied that the details of the transfers are best addressed by the discovery process.

### III.  Section 544 Claim

Wachovia further asserts that the Second Amended Complaint fails to state a claim under § 544 because Grayson has failed to sufficiently set forth facts demonstrating that Debtor was indebted at the time of the alleged transfers. "Section 544 does not establish substantive provisions for the avoidance of transfers; rather, it merely gives the Trustee the status of a creditor under state law and allows nonbankruptcy law to determine the rights that accrue as a result of that status." In re J.R.Deans, 249 B.R. 121, 129 (Bankr. D.S.C. 2000). Grayson, standing in the shoes of the Trustee, is asserting an unsecured creditor's rights to avoid fraudulent transfers under South Carolina's Statute of Elizabeth, S.C. Code Ann. § 27-23-10,.

Under South Carolina's Statute of Elizabeth, a fraudulent transfer will be set aside if the plaintiff can establish: (1) the transfer was made by the grantor with the actual intent of

---

[12]   Wachovia asserts that it was a mere conduit for the transfers of the stock and therefore was not a transferee of the fraudulent transfers. However, Grayson has alleged that Wachovia received commissions as a result of its role as the broker in the stock loan scheme. Commission payments to brokers may be recovered as fraudulent transfers. See In re Old Naples Securities, 343 B.R. 310 (Bankr. M.D. Fla. 2006); Bauman v. Bliese et al (In re McCarn's Allstate Finance, Inc.) 326 B.R. 843 (Bankr. M.D. Fla. 2005); Cuthill v. Kime et al. (In re Evergreen Security, Ltd., 319 B.R. 245 (Bankr. M.D. Fla. 2003); Terlecky v. Abels, 260 B.R. 446 (S.D. Ohio 2001); In re Randy, 189 B.R. 425 (Bankr. N.D. Ill. 1995).

defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Id. at 130. Fraudulent intent may be alleged generally. Fed.R.Civ. P. 9(b). The Court finds that Grayson has generally alleged that Debtor had the intent to defraud its creditors. Furthermore, Grayson has cited authority for the proposition that the existence of a Ponzi scheme gives rise to a presumption of fraudulent intent on the part of the proponent of the scheme. Manhattan Investment Fund, Ltd. et al v. Bear, Stearns Securities Corp. (In re Manhattan Investment Fund Ltd.), 359 B.R. 510, 517-18 (Bankr. S.D.N.Y. 2007); Reiser v. Hayslip (In re Canyon Systems Corp.), 343 B.R. 615, 637 (Bankr. S.D. Ohio 2006); Bauman v. Bliese et al (In re McCarn's Allstate Finance, Inc.), 326 B.R. 843 (Bankr. M.D. Fla. 2005); Liebersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.), 280 B.R. 103, 110 (Bankr. E.D. Pa. 2002). The Court further finds that the Second Amended Complaint includes sufficient allegations showing Debtor was indebted at the time of the alleged transfers by providing specific examples regarding Debtor's indebtedness to General Holding, Inc., The Hammond Family 1994, L.P., and Robert and Melanie Sabelhaus. By alleging that Wachovia had knowledge of Debtor's fraudulent scheme, Grayson has also alleged facts that, if true, would appear to be sufficient to impute Debtor's intent to Wachovia. Therefore, the Court concludes that Grayson has adequately stated a claim under § 544.

### III.    Was Wachovia the Initial Transferee of the Stock Transfers?

Wachovia argues that Grayson has failed to allege that Wachovia exercised legal control over the assets received and therefore has failed to set forth sufficient facts showing that Wachovia was an "initial transferee" of the stock transfers in order to state a claim under § 550. Grayson's right to recover fraudulent transfers is provided by § 550, which identifies the entities from which a trustee may recover.[13] The statute provides:

---

[13]    Grayson stands in the shoes of the Trustee because it purchased the Trustee's rights from the Trustee.

11

> [T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

"In order to constitute the 'initial transferee' of property under § 550(a), a person or entity must have exercised legal dominion and control over the property." Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties), 99 F.3d 151, 156 (4th Cir. 1996). A recipient of an avoidable transfer must exercise legal control over the asset received and not merely serve as a conduit for assets that were under the actual control of the debtor-transferor or the real initial transferee. See In re Pony Express Delivery Services, 440 F.3d 1296, 1300 (11th Cir. 2006); see also Rupp v. Markgraf, 95 F.3d 936, 941 (stating that the dominion and control test requires that the initial transferee have control over the funds and the right to put those funds to one's own purpose).

In paragraphs 75 and 76 of the Second Amended Complaint, Grayson alleges that the brokerage accounts opened in the name of Derivium Capital and Bancroft were margin accounts over which Wachovia exercised dominion and control. Grayson appears to rely on the account's status as a "margin account" to show Wachovia's dominion and control of the account, citing In re Manhattan Investment Fund, Ltd., 359 B.R. 510 (Bankr. S.D.N.Y. 2007), aff'd in part, rev'd in part, 2007 WL 4440360 (S.D.N.Y. Dec. 17, 2007).[14] The extent of Wachovia's dominion and control over these accounts may depend upon the margin agreement at issue, which is outside the pleadings, and is a question of fact not properly resolved on a motion to dismiss. In re Buckhead America Corp., 178 B.R. 956, 974 (D. Del. 1994)("[T]he nature and extent of the dominion and

---

[14] In Manhattan Investment, the court concluded that the powers vested in Bear Stearns through the margin account agreement clearly demonstrated that the holder of the account did not have access to its deposits once it placed them in the Bear Stearns account. The Court further concluded that the margin account agreement gave Bear Stearns the right to use the funds to protect itself.

control exercised by [defendants] ... is a question of fact, not subject to resolution on a motion to dismiss.") Wachovia may prevail at the summary judgment stage, but for purposes of the pleading stage, Grayson's Second Amended Complaint appears to sufficiently allege that Wachovia was an "initial transferee" for purposes of § 550.[15]

### IV. Is Plaintiff Barred from Alleging Constructive Fraud Because Wachovia Provided Value in Exchange for Brokerage Commissions?

In its Motion, Wachovia further asserts that Grayson cannot allege constructive fraud because Wachovia provided value in exchange for the brokerage commissions. Grayson does not argue in its Objection to the Motion that transfers to Wachovia are recoverable on a theory of constructive fraud. In fact, Grayson specifically states in its Objection that it "need not rely on theories of constructive fraud." Grayson also did not rely on a constructive fraud theory its argument at the hearing or within its proposed order regarding the Motion. Accordingly, to the extent Counts Ten and Eleven seek recovery under a constructive fraud theory, these claims should be dismissed.

### CONCLUSION

Based upon the foregoing, Wachovia's Motion to Dismiss the Second Amended Complaint is granted in part and denied in part. To the limited extent that Counts Ten and Eleven of the Second Amended Complaint seek recovery under a constructive fraud theory, those claims are dismissed with prejudice. Wachovia's remaining requests for relief are denied.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
September 19, 2008

---

[15] Furthermore, Wachovia exercised dominion and control over any commission payments it received as a result of brokering these transactions and would be the initial transferee of those funds. See In re Old Naples Securities, 343 B.R. 310 (Bankr. M.D. Fla. 2006).

13