FILED
at ___ O'clock & ___ min. ___ M
FEB 1 5 2011
United States Bankruptcy Court
Columbia, South Carolina (cn)

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Derivium Capital, LLC,<br><br>　　　　　　　　　　Debtor(s). | C/A No. 05-15042-JW<br><br>Adv. Pro. No. 07-80119-JW<br><br>Chapter 7<br><br>**ORDER** |
| Grayson Consulting, Inc.,<br><br>　　　　　　　　　　Plaintiff(s),<br><br>v.<br><br>Wachovia Securities, LLC<br>f/k/a First Union Securities, Inc., and<br>First Clearing, LLC,<br><br>　　　　　　　　　　Defendant(s). | ENTERED<br><br>FEB 1 5 2011<br><br>L.O. |

This matter comes before the Court upon the trial held on January 31, 2011, at which Defendants Wachovia Securities, LLC ("Wachovia Securities") and First Clearing, LLC ("First Clearing") (collectively referred to as "Wachovia" or the "Wachovia Defendants") and Plaintiff Grayson Consulting, Inc. ("Plaintiff") had the opportunity to present evidence on the limited issue of whether commissions received by Defendant Wachovia Securities from accounts held by Bancroft Ventures, Ltd. ("Bancroft"), Optech, Ltd. ("Optech") and Witco Services (UK), Ltd. ("Witco") between September 1, 2002 and September 1, 2005 were reasonable and customary in the securities industry and therefore, as discussed in a prior court order, subject to protection from recovery under 11 U.S.C. § 544 by virtue of the "stockbroker defense" provided by 11 U.S.C. § 546(e).

1

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O). Upon consideration of the evidence presented at trial, the Court makes the following findings:

## FINDINGS OF FACT[1]

### I. Industry Standards Concerning Commissions

1. During the relevant time period, September 1, 2002 through September 1, 2005, it was customary in the securities industry for broker-dealers to charge commissions for trades executed in customers' accounts on the customers' behalf.

2. Under rules established by the National Association of Securities Dealers ("NASD") (now known as the Financial Industry Regulatory Authority ("FINRA")) and applicable during the relevant time period, broker-dealers were permitted to charge "fair" commissions to their customers. See NASD Conduct Rule 2440 (providing that, in securities transactions, a broker-dealer "shall not charge his customers more than a fair commission or service charge"). The NASD has provided guidance to its members as to what constitutes a fair commission, explaining that it "should generally not exceed 5 percent of the total transaction amount." See NASD Notice to Members 93-81.

3. Under Rule 2440, NASD members were also permitted to charge handling or service fees to their clients as long as the total charge, when added to the commission, met the NASD guideline for fairness.

4. The NASD has never set "minimum" commission requirements.

---

[1] The Court has set forth the extensive factual background of this case in prior opinions, including Grayson Consulting, Inc. v. Wachovia Securities, LLC, et al., 396 B.R. 184 (Bankr. D.S.C. 2008), and Grayson Consulting, Inc. v. Wachovia Securities, LLC, et al., C/A No. 05-15042, Adv. Pro. No. 07-80119, slip op. (Bankr. D.S.C.). Therefore, the factual findings set forth in this Order are limited to those facts necessary to discuss the discrete issue determined herein.

## II. Industry Practices Concerning Commissions

5. During the relevant time period, Wachovia was a full service brokerage firm. Its competitors included full service firms such as Merrill Lynch, Smith Barney and Bear Stearns. Full service brokerage firms competed with each other for clients and business in a highly competitive marketplace.

6. During the relevant period, brokerage firms were not required by law or regulation to charge the same commissions as their competitors. Customarily, full service brokerage firms had their own, internal formulas for calculating commissions (the "standard commission rate"). But because of the competitive nature of the industry, full service brokerage firms tended to charge comparable commission rates to their customers.

7. Full service brokerage firms were also not required to charge the same commission rate to each of their customers. Customarily, firms would grant discounts from their standard commission rates in varying amounts in order to compete with other firms for customers and business.

8. Discounts of 60% or higher from a firm's standard commission rate were not unusual for, among others, large clients who conducted, or were expected to conduct, a significant volume of business with a full service brokerage firm.

9. Full service brokerage firms also charged fees to their customers in addition to commissions, sometimes referred to as handling or service fees. During the relevant period, Wachovia and other full service brokerage firms charged such a fee.

## III. Wachovia's Practices Concerning Commissions

10. During the relevant period, Wachovia charged commissions on purchases and sales of securities executed in customers' accounts on the customers' behalf.

11. Wachovia's standard commission rates were designed to be competitive with other full service brokerage firms.

12. Wachovia granted discounts from its standard commission rates in order to attract business and to compete with other broker-dealers. Discounts were frequently granted to, among others, large customers and customers who conducted, or were expected to conduct, a significant volume of business with Wachovia. Discounts could be "hard coded" into an account, meaning that Wachovia would automatically give the discount on purchases or sales in the account unless the discount was manually changed by the Wachovia employee entering the trade, or discounts could be granted on a trade-by-trade basis.

13. The primary broker assigned to the accounts held by Derivium Capital LLC ("Derivium"), Bancroft, Optech, and Witco was George Gordon.

14. During the relevant period, approximately 50-75% of Mr. Gordon's customers received some type of commission discount. On occasion, such discounts could be as high as 95% from Wachovia's standard commission rates.

### IV. The At-Issue Accounts

15. Derivium, Bancroft, Optech and Witco each received a 60% discount from Wachovia's standard commission rate beginning at the time they opened their accounts. Wachovia granted these discounts because the trading in the accounts was unsolicited, meaning that Wachovia was not expected to provide trading or investment advice, because the accounts were expected to do a significant volume of business through Wachovia and because the entities had relationships with other broker-dealers, with whom Wachovia was competing for the business. Mr. Gordon resisted Derivium's efforts to negotiate a steeper discount for these accounts.

16. Between September 1, 2002 and September 1, 2005, Derivium paid no commissions to Wachovia.

17. Between September 1, 2002 and September 1, 2005, Bancroft paid $359,842.51[2] in commissions to Wachovia. Between September 1, 2002 and September 1, 2003, Bancroft paid $184,984.03 in commissions to Wachovia. Between September 1, 2003 and September 1, 2004 Bancroft paid $141,327.79 in commissions to Wachovia. During the three-year period, the commissions averaged .34% of the transaction value of the securities traded in Bancroft's account.

18. Between September 1, 2002 and September 1, 2005, Optech paid $293,464.19 in commissions to Wachovia. Between September 1, 2002 and September 1, 2003, Optech paid no commissions to Wachovia. Between September 1, 2003 and September 2, 2004, Optech paid 130,044.49 in commissions to Wachovia. During the three-year period, the commissions averaged .38% of the transaction value of the securities traded in Optech's account.

19. Between September 1, 2002 and September 1, 2005, Witco paid $52,562.72 in commissions to Wachovia. Between September 1, 2002 and September 1, 2003, Witco paid $42,942.83 in commissions to Wachovia. Between September 1, 2003 and September 1, 2004,

---

[2] In its November 15, 2010 proposed pre-trial order, Wachovia stipulated that between September 1, 2002 and September 1, 2005, Bancroft paid trading commissions to Wachovia totaling $361,030.87, and that Optech paid trading commissions to Wachovia totaling $311,654.71. However, in its proposed pre-trial order submitted in connection with the January 31, 2011 hearing, Wachovia revised these figures to $359,842.51 as to Bancroft and $293,464.19 as to Optech in order to correct an alleged error in the calculation. Plaintiff objected to the revised figure because it did not have adequate time prior to the hearing to verify that there was an error or that the proposed changes were accurate. At the hearing, the parties indicated that they would confer after the hearing and advise the Court regarding whether they were able to agree to the revised figures. The Court has not received such information from the parties. Further, the proposed findings of fact submitted by the Plaintiff does not set forth contrary figures. Therefore, in light of its ruling that all commissions paid to Wachovia by Bancroft, Optech, and WITCO are protected from recovery by the stockbroker defense and considering that the evidence and testimony at trial supported the revised figures, the Court finds that the revised figures accurately represent the amount of commissions received by Wachovia during the relevant time period.

Witco paid $9,619.89 in commissions to Wachovia. During the three-year period, the commissions averaged .21% of the transaction value of the securities traded in Witco's account.

20. Between September 1, 2002 and September 1, 2005, Wachovia charged Bancroft, Optech and Witco a handling fee for purchases and sales of securities executed in their accounts. The handling fee ranged from $6.00 to $7.50 per security per trade day. The handling fees charged by Wachovia to Bancroft, Optech and Witco during the relevant time period totaled approximately $4,600.

21. The commissions and handling fees charged by Wachovia for the trades executed in Bancroft's, Optech's, and Witco's accounts were well below the 5% threshold used by the NASD as a guideline for fairness and were reasonable and customary when compared with standards and practices in the securities industry between September 1, 2002 and September 1, 2005. No evidence was presented indicating that the rates were so low as to be unreasonable.

## **CONCLUSIONS OF LAW**

Wachovia previously sought summary judgment on Plaintiff's § 544 claims, arguing that the stockbroker defense of 11 U.S.C. § 546(e) applied to bar recovery of transfers of commissions to Wachovia from the accounts held by Derivium, Bancroft, Optech, and WITCO. Section 546(e) provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made... to a ...stockbroker, that is made before the commencement of the case, except under § 548(a)(1)(A) of this title.

Wachovia argued that the commissions they received from Derivium, Bancroft, Optech, and WITCO constitute a "settlement payment" within the meaning of § 741. 11 U.S.C. § 741(8) defines "settlement payment" as a "preliminary settlement payment, a partial settlement

payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." By order issued September 14, 2010, the Court determined that recovery of the commissions at issue in this adversary proceeding may be barred as matter of law by the "stockbroker defense," as "payment[s] commonly made in the securities industry," if they were reasonable and customary. Considering that the application of the stockbroker defense to commissions appears to be one of first impression, the Court, in an abundance of caution, sought facts to ensure that the commissions at issue were not unusually high or in variance with commissions commonly received in the industry. In expressing that inquiry, the Court articulated the "reasonable and customary" standard. It does not appear in the language of the statute. The Court found that the record did not contain this information and therefore denied Wachovia's motion for summary judgment as to this issue, subject to that remaining factual presentation.

Pursuant to its authority under Fed. R. Civ. P. 42(b), which is made applicable to adversary proceedings by Fed. R. Bankr. P. 7042, and in order to address the issues presented in an expeditious manner, the Court ordered a separate trial on the limited issue of whether the commissions received by Wachovia were customary and reasonable and therefore protected from recovery under the stockbroker defense.

At trial, Wachovia presented the testimony of Mr. Gordon, the primary broker who handled the accounts at issue in this adversary proceeding, and John Pinto, whom the Court qualified as an expert on broker commission rates and industry standards, in order to demonstrate that the commissions received by Wachovia during the relevant time period were customary and reasonable. The Court found the testimony of Mr. Gordon and Mr. Pinto to be credible and convincing. Mr. Gordon testified that Bancroft, Optech, and WITCO's accounts were hard

coded with a 60% discount on commission rate for the purchase and sale of stocks and that they also received a significant discount on the commission rate for bond transactions—a commission rate of one-eighth of one percent was charged as opposed to the typical rate of one to two percent. Plaintiff argues that these rates were not reasonable or customary because they were so heavily discounted. However, Mr. Pinto's testimony indicated that, during the relevant time period, it was a common practice in the securities industry for brokerage firms to grant discounts from their standard commission rates in varying amounts in order to compete with other firms for customers and business, and that in his opinion, the commissions charged by Wachovia during that time period were "fair, reasonable, and customary," and "well within the requirements of the FINRA, NASD rules."

While Plaintiff cross-examined Defendants' witnesses, Plaintiff called no witnesses and presented no evidence, including expert testimony, regarding the reasonableness of the commissions charged relative to this case.

Accordingly, based on the testimony and other evidence presented at the trial, the Court concludes that the commissions paid to Wachovia by Bancroft, Optech, and WITCO between September 1, 2002 and September 1, 2005 were customary and reasonable, and thus constitute "settlement payments," which are protected from recovery pursuant to 11 U.S.C. § 546(e). Additionally, although handling fees were not explicitly the subject of Wachovia's previous summary judgment motion, the Court finds that the application of the stockbroker defense to handling fees is closely related to the application of that same defense to the commissions at issue.[3] Therefore, based on the evidence at trial, the Court finds that the handling fees charged by Wachovia during the relevant time period also appear customary and reasonable, and thus

---

[3] As stated in the findings of fact, the amount of handling fees at issue is $4,600.00. Further, the handling fees at issue appear to be closely connected to commissions charged by Wachovia in this case.

constitute "settlement payments" as "payments commonly made in the securities trade." Accordingly, the Court concludes that the handling fees charged to Bancroft, Optech, and WITCO by Wachovia between September 1, 2002 and September 1, 2005 are protected from recovery pursuant to 11 U.S.C. § 546(e). This Order is not intended to be a final judgment pursuant to Fed. R. Civ. Pro. 54(b) and Fed. R. Bankr. P. 7054, and is subject to revision at any time before the entry of judgment adjudicating all of Plaintiffs' claims.[4]

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
February 15, 2011.

---

[4] A final appealable order shall be entered at the conclusion of the trial of all remaining issues.